IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER L. BRINKMEIER and<br>TECNIMED SRL<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>EXERGEN CORPORATION<br><br>　　　　　Defendant. | Civil Action No. 1:10-cv-00176-SLR<br><br>**JURY TRIAL DEMANDED** |

## **AMENDED COMPLAINT**

For their complaint plaintiffs Jennifer L. Brinkmeier ("Brinkmeier") and Tecnimed SRL ("Tecnimed") (collectively "Plaintiffs"), by and through the undersigned attorneys, allege as follows:

## **THE PARTIES**

1. Plaintiff Brinkmeier is a person residing in Philadelphia, Pennsylvania and an Exergen consumer.

2. Plaintiff Tecnimed is a corporation organized and existing under the laws of the Republic of Italy, with a place of business in Varese, Italy, which sells its products in Delaware and is a competitor of Exergen.

3. On information and belief, Defendant Exergen Corporation ("Exergen" or "Defendant") is a Massachusetts corporation having a registered agent of Francesco Pompei, 51 Water Street, Watertown, Massachusetts 02172.

4. Exergen sells its products in Delaware.

5. Exergen's website states that Exergen is the recognized world leader in industrial and medical non-invasive temperature technology.  *See* Exh. A.

6. Exergen's website also states that Exergen is "[t]he creator of the first temporal artery thermometer—the Temporal Scanner™, the most efficacious, non-invasive thermometer ever created." *Id.*

7. Exergen holds over 100 U.S. and foreign patents and contends it is the only manufacturer of retail medical thermometers in the U.S. *Id.*

## JURISDICTION AND VENUE

8. This is an action for false marking, arising under the patent laws of the United States, 35 U.S.C. § 292, and for violations of the Lanham Act, 15 U.S.C. §1125 and the Delaware Deceptive Trade Practices Act, 6 Del. C. §2531, et seq.

9. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a).

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

11. This Court has personal jurisdiction over Exergen. Upon information and belief, Exergen regularly conducts business in Delaware, including selling its products in Delaware, and has committed acts of false marking in the State.

## THE PATENTS

12. U.S. Patent No. 4,636,091 (the "'091 patent"), entitled "Radiation Detector Having Temperature Readout," issued January 13, 1987 and expired June 27, 2005.

13. U.S. Patent No. 5,012,813 (the "'813 patent"), entitled "Radiation Detector Having Improved Accuracy," issued May 7, 1991 and expired April 14, 2009.

14. U.S. Patent No. 5,199,436 (the "436 patent"), entitled "Radiation Detector Having Improved Accuracy," issued April 6, 1993 and expired February 19, 2008 due to a terminal disclaimer.

15. U.S. Patent No. 5,653,238 (the "'238 patent"), entitled "Radiation Detector Probe," issued August 5, 1997 and expired December 6, 2008 due to a terminal disclaimer.

16. U.S. Patent No. 6,047,205 (the "'205 patent"), entitled "Radiation Detector Probe," issued April 4, 2000 and, upon information and belief, expired December 6, 2008 due to a terminal disclaimer.

17. U.S. Patent No. 6,056,435 (the "'435 patent"), entitled "Ambient and Perfusion Normalized Temperature Detector," issued May 2, 2000. The independent claims of the '435 patent are as follows and all of them require "comput[ing] an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature" or "comput[ing] an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, wherein the ambient temperature within the function is an assumed ambient temperature":

> 1. A body temperature detector comprising: a radiation sensor which views a target surface area of a body; and electronics which compute an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature, the weighted difference including a weighting factor which varies with the sensed surface temperature.
>
> 14. A body temperature detector comprising: a radiation sensor which views a target surface area of a body; and electronics which compute an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, including a weighted difference of the sensed surface temperature and the ambient temperature, the weighted difference including a weighting factor of about 0.13.
>
> 16. A body temperature detector comprising a radiation sensor which views a target surface area of a body; and electronics which compute an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, wherein the ambient temperature within the function is an assumed ambient temperature.

3

> 25. A body temperature detector comprising: a radiation sensor which views a target surface area of a body; and electronics which compute an internal temperature of the body as a function of ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature, the weighted difference including a weighting factor which is an approximation of h/pc where h is a heat transfer coefficient between the target surface and ambient, p is perfusion rate and c is blood specific heat and h/pc varies over a range of at least 0.09 to 0.13 with the sensed surface temperature, and the ambient temperature being an assumed ambient temperature modified as a function of a sensed detector temperature, a change in the assumed ambient temperature relative to change in the sensed detector temperature being less than 0.5.
>
> 29. A method of detecting body temperature comprising: detecting radiation from a target surface area of a body; computing an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature, the weighted difference including a weighting factor which varies with the sensed surface temperature; and providing a display of the internal temperature.
>
> 32. A method of detecting body temperature comprising: detecting heat flux from a target surface area of a body; computing an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the ambient temperature within the function being an assumed ambient temperature; and providing a display of the internal temperature.

18.     U.S. Patent No. 6,299,347, (the "'347 patent"), entitled "Ambient and Perfusion Normalized Temperature Detector," issued October 9, 2001. The independent claim of the '347 patent is as follows and it requires "compute[ing] an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature":

> 1. A body temperature detector comprising: a radiation sensor which views a target surface area of the body; and electronics which compute an internal temperature of the body as a function of a sensed ambient temperature and a sensed surface temperature of the body, the function including a weighted difference of the sensed surface temperature and the sensed ambient temperature, the weighting being varied with sensed temperature.

19.     U.S. Patent No. 6,499,877 (the "'877 patent"), entitled "Ambient and Perfusion Normalized Temperature Detector," issued December 12, 2002. The

4

independent claims of the '877 patent are as follows and all of them require either "comput[ing] an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature" or "comput[ing] an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, wherein the ambient temperature within the function is an assumed ambient temperature" :

1. A body temperature detector comprising: a temperature sensor which senses surface temperature of the body and electronics which compute an internal temperature of the body as a function of ambient temperature and the sensed surface temperature of the body, the function including a weighted difference of the sensed surface temperature and the ambient temperature, the weighting being varied with sensed temperature.

2. A body temperature detector comprising: a temperature sensor which senses a surface temperature of a body; and electronics which compute an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature, the weighted difference including a weighting factor which varies with the sensed surface temperature.

9. A body temperature detector comprising: a temperature sensor which senses a surface temperature of a body; and electronics which compute an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, wherein the ambient temperature within the function is an assumed ambient temperature.

14. A method of detecting body temperature comprising: sensing surface temperature of a body; computing an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the function including a weighted difference of the sensed surface temperature and the ambient temperature, the weighted difference including a weighting factor which varies with the sensed surface temperature; and providing an internal temperature signal.

16. A method of detecting body temperature comprising: sensing surface temperature of a body; computing an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, the ambient temperature within the function being an assumed ambient temperature; and providing an internal temperature signal.

20. Exergen sued at least six competitors for infringing the '813 patent and at least two competitors for infringing each of the '205, '435, '877 and '347 patents. *See, e.g., Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009); *Exergen Corp. v. Kidz-Med, Inc.*, C.A. No. 1:08-cv-11416-DPW (D. Mass. Aug. 15, 2008) (attached as Exh. B).

21. Upon information and belief, the Federal Circuit held that all claims of the '205 patent are anticipated and the patent is invalid.

## COUNT I – FALSE MARKING

22. Plaintiffs re-allege and incorporate herein by reference the allegations stated in paragraphs 1-21 of this Complaint.

23. The purpose of patent marking is to encourage the patentee to give notice of the patent to the public.

24. A party marking patents on an article must have a reasonable belief that the products are properly marked.

25. When a patent expires, all monopoly rights in the patent terminate irrevocably. Therefore, a product marked with an expired patent is not currently protected by such expired patent.

26. The language in a terminal disclaimer sets the expiration date for the patent to which it applies.

27. Exergen is a sophisticated company and has many decades of experience applying for, obtaining, and litigating patents.

28. Exergen intentionally marks its products with patent markings to inform the public and its competitors that its products are covered by patents.

29. Exergen has previously accused companies of patent infringement.

30. Upon information and belief, when a patent application is being prosecuted at the U.S. Patent and Trademark Office, any outside attorney Exergen retained to prosecute the application communicated with Exergen regarding the application's claims, any amendments to the claims, and terminal disclaimers, if any, for the applications.

31. Upon information and belief, Exergen oversees prosecution of its patent applications, including, but not limited to, reviewing and approving the preparation and filing of patent applications, reviewing and approving amendments to the claims and terminal disclaimers, if any, in Exergen's patent applications, and authorizing payment of issue fees.

32. Specifically, upon information and belief, Dr. Francesco Pompei, the President of Exergen and a named inventor in the patents in suit and has been personally involved in the prosecution of the '091, '813, '436, 238, '205, '435, '877 and '347 patents.

33. Dr. Pompei approves Exergen's patent applications and any amendments to the claims during prosecution of the applications.

34. According to Exergen's website, it is the holder of over 100 patents. *See* Exh. A.

35. After a utility patent issues, a maintenance fee must be paid or the patent will expire.

36. Exergen received and continues to receive patent maintenance fee notices and has consistently paid or authorized payment of the maintenance fees on many patents.

37. More specifically, upon information and belief, Dr. Pompei paid or authorized payment of the maintenance fees on many of Exergen's patents.

38. Exergen determines which patents to mark on its products by reviewing the patents and the products.

39. More specifically, Dr. Pompei is involved in product development of Exergen's products and approves the patent markings on each product that has patent markings.

40. Exergen knows by itself or by its representatives at least constructively that patents expire (*i.e.*, that patents do not have an indefinite duration).

41. Exergen is, or should be, aware of when litigated patents expire given the added attorney effort involved in enforcing or defending against litigated patents.

42. Exergen is, or should be, aware of the scopes of litigated patents given that those patents are subject to extensive claim construction rulings which determine the outer-limits of coverage for the litigated patents.

43. As a sophisticated company that regularly litigates or oversees litigation of patent infringement and that regularly prosecutes patents or oversees patent prosecution, Exergen knows, or reasonably should know, of the requirements of 35 U.S.C. § 292.

44. Exergen has in the past manufactured and marketed, or caused to be manufactured and marketed, and presently manufactures and markets, or causes to be manufactured or marketed, products for sale to the general consuming public and medical entities or institutions, including, among other things, industrial and medical non-invasive temperature technology.

45. Exergen has in the past marked, or caused to be marked, and presently marks, or causes to be marked, a number of its thermometers with at least one expired patent.

46.     Specifically, Exergen has in the past marked, or caused to be marked, and presently marks, or causes to be marked, various of its products (including but not limited to the TAT2000 and TAT5000 thermometers) with the '091, '813, '436, 238, and '205 patents including, but not limited to, temporal artery thermometers.  *See* Exh. C.

47.     At least because of Exergen's being responsible for its intellectual property and patent markings, upon information and belief, Exergen intentionally and unreasonably included in the patent markings the expired '091, '813, '436, and '238 patents and the expired and invalid '205 patent.

48.     At least because of Exergen's suing competitors for allegedly infringing the '813 and '205 patents and knowing that the Federal Circuit found that all of the claims of the '205 patent are invalid, upon information and belief, Exergen intentionally and unreasonably included in the patent markings the '813 and '205 patents.

49.     Upon information and belief, Exergen knows, or at least should know (itself or by its representatives), that the '091, '813, '436, 238, and '205 patents marked on the products identified above are expired and that the Federal Circuit found that '205 invalid.

50.     Upon information and belief, Exergen knows that the products identified above are not covered by the expired '091, '813, '436, 238, and '205 patents marked on such products because expired patents have no monopoly rights.

51.     Upon information and belief, Exergen knows that the products identified above are not covered by the anticipated '205 patent because anticipated patents are invalid and have no monopoly rights.

52.     Indeed, in addition to directly marking its products with the expired patents listed above, Exergen also sent a letter on February 8, 2006 to at least one

9

wholesale distributor advertising that its products were covered by the expired '091 patent, knowing full well that the '091 patent had expired on June 27, 2005.  See Exh. D.

53.	At least for the reasons set forth herein, and/or for other reasons which will later be evidenced, Exergen has, upon information and belief, falsely marked its products, with the intent to deceive the public, in violation of 35 U.S.C. § 292.

54.	Upon information and belief, Exergen has in the past marked, or caused to be marked, and presently marks, or causes to be marked, a number of its thermometers with at least one patent whose scope unmistakably does not cover the product on which it is affixed.

55.	Specifically, Exergen has in the past marked, or caused to be marked, and presently marks, or causes to be marked, various of its products with the '435, '877 and '347 patents including, but not limited to, temporal artery thermometers.  *See* Exh. C.

56.	Because Exergen has litigated the '435, '877 and '347 patents, it knows that each independent claim of the '435, '877 and '347 patent calls for a device that either "compute[s] an internal temperature of the body as a function of a sensed ambient temperature and a sensed surface temperature of the body, the function including a weighted difference of the sensed surface temperature and the sensed ambient temperature" or "compute[s] an internal temperature of the body as a function of an ambient temperature and a sensed surface temperature, wherein the ambient temperature within the function is an assumed ambient temperature"  *See, e.g.* '435 patent claims 1, 9, 14, 16, 25, 29, and 32; '347 patent claim 1; '877 patent claims 1, 2, 9, 14, and 16.

57.	On information and belief, the thermometer products that Exergen marks with the '435, '877 and '347 patents do not have the ability to compute an internal temperature of the body using "a weighted difference of the sensed surface temperature

10

and the sensed ambient temperature" or where "the ambient temperature within the function is an assumed ambient temperature."

58. For example, the manual for Exergen's TAT-5000 temporal scanner indicates that Exergen's thermometers do not use either a weighted difference of ambient and surface temperature or an assumed ambient temperature as part of computing internal body temperature. *See* Exh. E at p. 10.

59. Specifically, the manual for the TAT-5000 states:

> The patented arterial heat balance technology (AHB™) automatically measures the temperature of the skin surface over the artery and the ambient temperature. It samples these readings some 1000 times a second, ultimately recording the highest temperature measured (peak) during the course of the measurement.

*Id*. Thus, the TAT-5000 uses the "highest temperature measured peak" as opposed to "a weighted difference of the sensed surface temperature and the sensed ambient temperature" or "an assumed ambient temperature" for computing internal body temperature.

60. Exergen's temporal thermometers that are marked with the '435, '877 and '347 patents are unmistakably not covered by the claims of those patents.

61. On information and belief, Exergen's marking of its temporal thermometers with the '435, 877 and '347 patents is a literally false statement and has been false *ab initio*.

62. At least because of Exergen's being responsible for its intellectual property and patent markings, upon information and belief, Exergen intentionally and unreasonably included in the patent markings the '435, 877 and '347 patents.

63. At least because of Exergen's suing competitors for allegedly infringing the '435, '877 and '347 patents and knowing the scopes of those patents by conducting

pre-suit investigations and participating in *Markman* proceedings as well as being involved in the prosecution history of those patents, upon information and belief, Exergen intentionally and unreasonably included in the patent markings the '435, '877 and '347 patents.

64.   Exergen knows, or at least should know (itself or by its representatives), that the '435, '877 and '347 patents marked on the products identified above unmistakably do not cover the products on which they are marked.

65.   Indeed, in addition to directly marking its products with the inapplicable patents listed above, Exergen also sent a letter on February 8, 2006 to at least one wholesale distributor advertising that its products were covered by the expired '435 and '347 patent, knowing full well that its products were not covered by the claims of those patents.  See Exh. D.

66.   At least for the reasons set forth herein, and/or for other reasons which will later be evidenced, Exergen has, upon information and belief, falsely marked its products, with the intent to deceive the public, in violation of 35 U.S.C. § 292.

67.   Upon information and belief, Exergen marks products identified in above with the '091, '813, '436, 238, '205, '435, '877 and '347 patents for the purpose of deceiving the public into believing that something contained in or embodied in the products is covered by or protected by '435, '877 and '347 patents, the expired the '091, '813, '436, and '238 patents, and the expired and invalid '205 patent.

68.   Each expired or inapplicable patent marked on the products identified above is likely to, or at least has the potential to, discourage or deter others from commercializing a competing product.

69. Exergen's marking the expired '813 patent and the expired and invalid '205 patent on the products identified above is likely to, or at least has the potential to, discourage or deter others from commercializing a competing product, especially since Exergen previously sued competitors for infringing these patents.

70. Exergen's marking the inapplicable '435, '877 and '347 patents on the products identified above is likely to, or at least has the potential to, discourage or deter others from commercializing a competing product, especially since Exergen previously sued competitors for infringing these patents.

71. Upon information and belief, Exergen knows, or reasonably should know, that marking the products identified above with false patent statements was and is illegal under Title 35 of the United States Code.  At a minimum, Exergen had and has no reasonable basis to believe that its use of the false markings was or is proper or otherwise permitted under federal law.

72. Upon information and belief, Exergen's marking of its products with the '091, '813, '436, 238, '205 '435, '877 and '347 patents as described above and/or as will be further later evidenced, has wrongfully quelled competition with respect to such products to an immeasurable extent thereby causing harm to its competitor Tecnimed and to the United States in amounts which cannot be readily determined.

73. Upon information and belief, for at least the reasons set forth herein, Exergen has wrongfully and illegally advertised patent monopolies which it does not possess, and, as a result, has likely benefitted in at least maintaining its considerable market share with respect to the herein described products in the market place.

74.     For at least the reasons provided herein, and/or for other reasons which will be later evidenced, each expired patent which is marked on a product likely, or at least potentially, contributes to the public harm.

75.     Thus, each expired patent marked on a product, directly or on the packaging thereof, multiplied by the number of products and/or packaging materials on which it appears is a separate "offense" pursuant to 35 U.S.C. § 292(a).

## COUNT II – VIOLATION OF § 43(a) OF THE LANHAM ACT

76.     Plaintiff Tecnimed realleges and incorporates by reference the foregoing paragraphs.

77.     Tecnimed seized substantial market share from Exergen with its innovative products.  On information and belief, Exergen found itself being left behind by a market entrant that was more focused on creating truly innovative products for the market place.

78.     In response to legitimate competition from Tecnimed, Exergen sent at least one letter via interstate mail to at least one distributor of Tecnimed's products and wrongly represented  that Exergen's products were covered by numerous patents – including the then expired '091 patent and the inapplicable '435, and '347 patents.  *See* Exh. D.

79.     Because Exergen had previously sued several other distributors, including Wal-Mart and CVS, for patent infringement as a result of those distributors selling purportedly infringing products, these communications caused harm to Tecnimed in an amount which cannot be readily determined.

80.     On information and belief, Exergen knew that the assertions of patent coverage in its communications were objectively baseless; particularly given the

14

expiration of the '091 patent and the inapplicability of the '435 and '347 patents to Exergen's products, and thus the statements were made in bad faith.

81. On information and belief, Exergen made false or misleading representations to companies that have purchased or were considering purchasing Tecnimed's products.

82. Exergen's false or misleading representations relate to a product in interstate commerce. The Exergen temporal artery thermometers are sold throughout the United States.

83. Furthermore, Exergen's statements were made through interstate mail and/or via interstate telephone wires.

84. Exergen's false or misleading representations were made in the context of commercial advertising or promotion because they were made to the direct wholesale purchasers of Exergen's and/or Tecnimed's products.

85. Exergen's false or misleading representations deceive or are likely to deceive customers regarding whether Exergen's products are covered by certain patents or whether Tecnimed's products infringe Exergen's patents.

86. Exergen's false or misleading representations are material because they are likely to influence a customer's decision to purchase the Exergen's and/or Tecnimed's thermometers.

87. Exergen's false or misleading representations have injured or are likely to injure Tecnimed by intimidating consumers into not purchasing Tecnimed's thermometers, or at least delaying any purchase until some later date.

## COUNT III – VIOLATION OF
## UNIFORM DECEPTIVE TRADE PRACTICES ACT

88. Plaintiff Tecnimed realleges and incorporates by reference the foregoing paragraphs.

89. Exergen's actions described above we done in bad faith and constitute unfair competition and deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. §§ 2531 et seq.

90. Specifically, Exergen's knowingly false and misleading representations, made in bad faith, violate §§ 2532(a)(5), (7), (8), and (12).

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues appropriately triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against Exergen for the following:

a. A decree that Exergen has falsely marked products in violation of 35 U.S.C. § 292;

b. An award of monetary damages, pursuant to 35 U.S.C. § 292, in the form of a civil monetary fine of $500 per false marking offense, or an alternative amount as determined by the Court, one-half of which shall be paid to the United States of America;

c. An accounting for any falsely marked products not presented at trial and an award by the Court of additional damages for any such falsely marked products;

d. A decree that this case is exceptional pursuant to 35 U.S.C. § 285;

e. A judgment that Exergen's false and misleading statements violate the Lanham Act and the Delaware Uniform Deceptive Trade Practices Act;

      f.      An award to Tecnimed of damages for violations of the Lanham Act and the Delaware Uniform Deceptive Trade Practices Act in an amount to be proven at trial;

      g.      An awarded of attorneys' fees and costs of suit to the fullest extent allowed by law; and

      h.      Such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.

Dated: April 30, 2010

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis #4606
    stamoulis@swdelaw.com
Richard C. Weinblatt #5080
    weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

*Attorneys for Plaintiffs*